# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 595 | **DATE** | 11/2/2004 |
| **CASE TITLE** | USA ex rel. JERROLD DAVIS vs. EUGENE McADORY, Warden, | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies the petition for writ of habeas corpus. This case is hereby terminated. Any pending motions or schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 03 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |

U.S. DISTRICT COURT

2004 NOV -2 PM 3:05

Date/time received in central Clerk's Office — mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| JERROLD DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Judge Ronald A. Guzmán |
| v. | ) | |
| | ) | 04 C 595 |
| EUGENE McADORY, Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**DOCKETED**

NOV ‾ 3 2004

## MEMORANDUM OPINION AND ORDER

Petitioner Jerrold Davis is in the custody of Eugene McAdory, warden of the Menard

Correctional Center in Menard, Illinois. He petitions this Court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 and asserts eight grounds for relief. For the reasons stated below,

the Court denies the petition.

## FACTS[1]

Larion Jackson was shot and killed around 2:30 a.m. on July 7, 1998. He was on a porch

at 512 North Laramie with his brother, Chris Jackson, and several others at the time of the

shooting.

At trial, Chris Jackson testified that he, Larion, and several others were playing cards on

the porch when he heard a click as the card game was wrapping up. He then looked toward the

street and saw two men, one with a shotgun and the other with a handgun, about ten feet away

---

[1]The court presumes the facts as presented by the Appellate Court are correct. 28 U.S.C.
§ 2254(e)(1); *Tayborn v. Scott*, 251 F.3d 1125, 1126 (7th Cir. 2001).

with guns aimed at the porch. The men started shooting, and Chris crawled into the house. He testified that he heard about seven or eight shots fired. Chris also testified that he was able to see the face of the shooter with the handgun, he believed that the shooter with the handgun was Jerrold Davis, and that Jerrold was wearing a black, hooded sweatshirt. After the shooting, Chris went back on the porch and saw Larion on the porch with a gunshot wound. Chris gave the police a description of the shooter. Additionally, several days after the shooting, he viewed a lineup and identified Davis as the shooter with the handgun.

At trial, Jemar Williams also testified. He stated he had seen Davis "throwing up" gang signs while near Blackstone street gang members. Although Williams had signed a statement in the presence of an Assistant State's Attorney and Detective Gilger stating he had witnessed the shooting, at trial he denied he saw the shooting. He testified that he signed the statement due to police coercion. The prosecution offered Williams' original statement into evidence and it was admitted. In Williams' original statement he stated that he was on the front porch of his house on July 7, 1998 at about 2:30 a.m., he saw a white, four-door Ford Tempo pull up. The driver of the car was Jerrold's twin brother, Derrold Davis. He further testified that when the car pulled up, Jerrold and a third man left the car. Jerrold was wearing a black hooded sweatshirt with matching pants and was carrying either a nine millimeter or .45 caliber handgun. After walking up to the gate at 512 North Laramie, the two men started shooting at the porch. Williams stated that when the shooting occurred fifteen to eighteen people were on the porch. When the shots were fired the people on the porch began to run and attempt to get into the house. According to Williams, the man with the shotgun fired twice and Jerrold fired over ten times. Williams saw a man on the porch fall down and, after the shooting, saw the two men get back into the car and drive away.

2

Macanzie Clark was also a witness for the prosecution. When Clark was detained on July 11, 1998, he told Detective Gilger that on the day after the shooting, Jerrold told him that he and another person shot at the porch on Laramie. Clark also stated Jerrold said he was the one carrying the shotgun. Clark had known Jerrold and Derrold since the sixth grade and was able to tell them apart because one had a mole on his face. Clark took a polygraph exam, and after being told the results, he admitted he had lied about Jerrold holding the shotgun. Instead, Clark then stated that Jerrold told him he had the .45 caliber gun. Clark stated that the reason he fabricated the first story was that he did not want to get Jerrold in more trouble than he was in already. Clark's account of his conversation with Jerrold was admitted at trial as a handwritten statement. Clark also testified at a grand jury proceeding and again stated that Jerrold had the .45 caliber gun. This testimony was also admitted at trial.

In his grand jury testimony, Clark recounted what he asserted Jerrold had told him regarding the shooting. Clark testified that he himself was a member of the Black Peace Stones gang and that the Black Peace Stones were at war with the Traveling Vice Lords and the Undertaker gangs. Clark stated that Jerrold believed the people on the Laramie porch were members of the Traveling Vice Lords or the Undertaker gangs. He stated that Jerrold said the car in which he rode was parked about two houses away from 512 North Laramie. He testified that Jerrold stated that he and the man in the back seat got out of the car and the man in the back seat was armed with a pump shotgun and shot first. Jerrold also said he fired the .45 caliber gun "a lot of times." He stated that Jerrold said the men then returned to the car and drove away. During his testimony, Clark stated that he originally lied to the police to protect Jerrold, but he was telling the truth to the grand jury because he recognized the severity of the charge.

At the jury trial, Clark denied that Jerrold confessed to the shooting. He admitted that he

had made prior inconsistent statements, but he said the inconsistent statements were due to police coercion.

When Detective Gilger testified at trial he spoke about the circumstances and content of Clark and Williams' oral and handwritten statements. He also testified that both Chris Jackson and Williams viewed separate lineups and identified Jerrold as the shooter with the handgun. Detective Gilger also testified as an expert witness about gangs in the area of the shooting. He testified that in the summer of 1998 the Vicelord and the Blackstone gangs were at war over the right to sell drugs in the area where the shooting occurred.

Larion's autopsy showed he died of a gunshot wound to the head. Two fired bullets and seven cartridge casings were recovered from the scene, all from a .45 caliber gun. The casings and bullets were also found to be from the same gun. Additionally, a shotgun shell was found at the scene and shotgun wadding was found under Larion's body.

## PROCEDURAL HISTORY

On December 13, 2000, in Cook County, Illinois, a jury found Jerrold guilty of first degree murder and attempt murder. Jerrold was sentenced to respective concurrent terms of forty years and thirty years in prison. The Honorable Colleen McSweeney Moore denied Jerrold's motion for a new trial.

Jerrold appealed to the Illinois Court of Appeals, arguing the following: (1) Detective Gilger was not qualified as a gang expert and the admission of his testimony was improper; (2) he was denied a fair trial when the trial court improperly admitted gang and drug testimony of Clark and Williams; (3) he was denied a fair trial when the court abused its discretion and made numerous incorrect evidentiary rulings; (4) it was reversible error for the trial judge to consider

4

the evidence from a co-defendant's earlier trial when ruling on issues in his trial; (5) it was reversible error to admit and publish bloody photographs that were of no probative value and highly prejudicial; (6) it was reversible error to admit polygraph evidence of a state witness; (7) it was reversible error for the trial court to give jury instructions which allowed for a finding of guilt for murder and attempted murder based upon "great bodily harm" language; and (8) he was not proven guilty beyond a reasonable doubt. On September 30, 2002, the Appellate Court affirmed Jerrold's conviction.

On October 21, 2002, Jerrold petitioned for leave to appeal to the Supreme Court of Illinois and presented only three issues for review. First, Jerrold argued Detective Gilger was not qualified to offer expert opinion testimony regarding gangs. Second, he asserted he was denied a fair trial because the trial court improperly admitted testimony from Williams and Clark. Third, he claimed that the evidence presented in the case was insufficient for a conviction beyond a reasonable doubt. On February 5, 2003, the Supreme Court of Illinois denied Jerrold's petition for leave to appeal.

On January 26, 2004, Davis filed the instant petition for writ of habeas corpus, and on March 11, 2004, he filed an amended petition. He raises the following claims: (1) Detective Gilger was not qualified as a gang expert and the admission of his testimony was improper; (2) he was denied a fair trial when the trial court admitted the gang and drug testimony of Clark and Williams; (3) he was denied a fair trial when the court abused its discretion and made numerous incorrect evidentiary rulings; (4) it was reversible error for the trial judge to consider the evidence from a co-defendant's earlier trial when ruling on issues in his trial; (5) it was reversible error to admit and publish bloody photographs that were of no probative value and highly prejudicial; (6) it was reversible error to admit polygraph evidence of a state witness; (7)

it was reversible error for the trial court to give jury instructions which allowed for a finding of guilt for murder and attempted murder based upon "great bodily harm" language; and (8) he was not proven guilty beyond a reasonable doubt.

## DISCUSSION

### I.    Non-cognizable Claims

As an initial matter, at least five of Jerrold's eight claims are non-cognizable under habeas review because he merely complains about the state court's application of state law. Federal habeas relief is available to a person who establishes that his incarceration violates the Constitution, laws or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990); *Jones v. Thieret*, 846 F.2d 457, 459-61 (7th Cir. 1988). Thus, the following claims in which Jerrold argues that the state court erred in applying Illinois law are not cognizable under habeas review: (1) Detective Gilger was not qualified as a gang expert and the admission of his testimony was improper; (2) it was reversible error for the trial judge to consider the evidence from a co-defendant's earlier trial when ruling on issues in his trial; (3) it was reversible error to admit and publish bloody photographs that were of no probative value and highly prejudicial; (4) it was reversible error to admit polygraph evidence of a state witness; (5) it was reversible error for the trial court to give jury instructions which allowed for a finding of guilt for murder and attempted murder based upon "great bodily harm" language. Out of an abundance of caution, below the Court addresses all of Jerrold's claims as if he had raised them as constitutional violations.

## II.    Procedural Default

Prior to a federal court granting habeas relief to a state prisoner, the prisoner must exhaust all of his remedies in state court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999) (explaining that comity requires the state court to have the first chance to review whether a state imprisonment violates federal law).  To exhaust his state remedies, the petitioner must have presented each claim fully and fairly to the state courts. *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003); *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

As stated above, although Davis raises eight claims in his habeas petition, he raised only three claims in his petition for leave to appeal to the Supreme Court of Illinois.  Therefore, the following five claims are procedurally defaulted because Jerrold failed to present them to the Supreme Court of Illinois:  (1) the trial court made numerous incorrect evidentiary rulings;  (2) the trial court erred by using its knowledge of the co-defendant's trial when making rulings;  (3) the trial court erred in admitting bloody photographs of the victim; (4) the trial court erred in admitting evidence regarding a witnesses' polygraph test; and (5) the jury instructions were incorrect.

Failure to raise a claim in a full round of state appellate review is not the only way a claim may be procedurally defaulted.  A claim may also be defaulted if the state court declined to reach its merits because the state court based its decision on an independent state law ground that is adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991). A state court judgment is independent if the state court actually relied on a state rule that is

sufficient to justify its decision, and it is adequate if the state court acts in a consistent and reasoned way. *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382-84 (7th Cir. 1990). This doctrine ensures that federal courts respect a state's legitimate reasons for holding a prisoner. *Coleman*, 501 U.S. at 730. ("Without the rule, . . . habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws").

Seven of Jerrold's eight habeas claims are procedurally defaulted on the basis of the independent adequate and state grounds doctrine. The Court addresses each in turn.

First, with regard to Jerrold's argument that the trial court improperly admitted Detective Gilger's testimony regarding gangs, the appellate court based its analysis of the testimony on a three-part test used by Illinois courts to determine whether a police officer may testify regarding gang activity: (1) whether the testimony qualifies as an expert opinion; (2) whether the testimony was relevant; and (3) whether the unfairly prejudicial effect of the testimony substantially outweigh its probative value. *See People v. Davis*, 779 N.E.2d 443, 456-58 (Ill. App. Ct. 2002). The appellate court applied the three factors of the test to the case before it: (1) Detective Gilger's qualifications as a violent crimes and gang officer and his experience investigating gang shootings; (2) the relevance of his testimony, which was crucial to establish motive; and (3) the risk of unfair prejudice did not substantially outweigh the probative value of Gilger's testimony. Additionally, the appellate court's application of Illinois law was consistent with its approach in other cases. *See, e.g., id.*; *People v. Williams*, 753 N.E.2d 1089, 1100-01 (Ill. App. Ct. 2001); *People v. Jackson*, 495 N.E.2d 1207, 1214-15 (Ill. App. Ct. 1986). Because the appellate court relied on an independent and adequate state ground, this Court may not reach a decision on the merits of this habeas claim.

Next, Jerrold's claim that the trial court erred in admitting evidence regarding Clark's polygraph test is procedurally barred because the appellate court disposed of the claim on an independent and adequate state law ground. The appellate court relied on *People v. Jackson*, 556 N.E.2d 619, 629 (Ill. App. Ct. 1990), which held that evidence concerning a polygraph examination is admissible on the issue of voluntariness of a statement when accompanied by a jury instruction that limits consideration of such evidence for the sole purpose of determining whether the defendant's statement was voluntary. The appellate court found the circumstances in Jerrold's case nearly identical to those in *Jackson* in that Clark claimed his statement that incriminated Jerrold was involuntary and the trial court gave the jury the same limiting instruction. Further, the appellate court's ruling comports with other state court rulings on the issue of admissibility of polygraph test evidence in this limited situation and with the proper precautions. *See, e.g., People v. Jefferson*, 705 N.E.2d 56, 62 (Ill. 1998); *People v. Triplett*, 226 N.E.2d 30, 32-33 (Ill. 1967). Accordingly, this claim is procedurally barred and the Court need not address the merits.

In addition, some of Jerrold's habeas claims are procedurally defaulted because the appellate court held that he had waived the issues on appeal for failure to comply with a state procedural requirement. When a state court declines to address a prisoner's claim because he has failed to meet a state procedural requirement, federal courts may not address the issue in habeas proceedings. *Coleman*, 501 U.S. at 730; *Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003).

First, the appellate court held that the following issues were waived on appeal because Jerrold failed to raise the issues either during trial or in his post-trial motion, citing *People v. Enoch*, 522 N.E.2d 1124, 1129-30 (Ill. 1988): (1) the court improperly admitted gang and drug

9

testimony of Williams; (2) the court made various improper evidentiary rulings; and (3) the court erred in considering evidence from a co-defendant's trial when making pre-trial evidentiary rulings; (4) the court erred in admitting evidence regarding Clark's polygraph test; (5) the court erred in giving improper jury instructions. The appellate court clearly relied on Illinois law, and in doing so its ruling comported with decisions of other appellate courts to have reached the issue. *See, e.g., People v. Ward*, 609 N.E.2d 252, 259 (Ill. App. Ct. 1992).

Second, the appellate court held that the issues (1) whether the court erred in admitting the gang and drug testimony of Clark and (2) whether the court erred in admitting bloody photographs of the deceased were waived because Jerrold failed to support his appellate arguments with citations to the record or to legal authority in violation of Illinois Supreme Court Rule 341(e)(7) (requiring arguments to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). These rulings were in accord with *Flynn v. Vancil*, 242 N.E.2d 237, 241 (Ill. 1968), *People v. Williams*, 640 N.E.2d 981, 984 (Ill. App. Ct. 1994), *People v. Loera*, 619 N.E.2d 1300, 1316 (Ill. App. Ct. 1993), and *People v. Isbell*, 532 N.E.2d 964, 970 (Ill. App. Ct. 1988). Thus, these claims are procedurally barred.

Therefore, seven of Jerrold's eight claims are procedurally defaulted. They are: (1) Detective Gilger was not qualified as a gang expert and the admission of his testimony was improper; (2) he was denied a fair trial when the trial court admitted the gang and drug testimony of Clark and Williams; (3) he was denied a fair trial when the court abused its discretion and made numerous incorrect evidentiary rulings; (4) the trial judge erroneously considered the evidence from a co-defendant's earlier trial when ruling on issues in his trial; (5) the trial court improperly admitted and published bloody photographs that were of no probative value and

10

highly prejudicial; (6) the trial court erred when it admitted polygraph test evidence of Clark; and (7) it was reversible error for the trial court to give jury instructions which allowed for a finding of guilt for murder and attempted murder based upon "great bodily harm" language.

However, Jerrold may revive his defaulted claims if he demonstrates: (1) cause for the default and actual prejudice resulting from this Court's failure to consider the merits of the claim; (2) or that a failure to consider the claims will result in a miscarriage of justice. *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). Cause may be shown by citing an objective, external factor which impeded counsel's efforts to comply with the procedural rules of the state. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, Jerrold has failed to provide any reason for his failure to raise certain issues during trial, on appeal, or in his petition for leave to appeal to the Supreme Court of Illinois.

Because Jerrold fails to advance any cause for his defaults, external or otherwise, his claims may only be considered by this Court if its declining to address the claims would result in a "fundamental miscarriage of justice." *Rodriguez*, 193 F.3d at 917. To overcome procedural defaults and allow a federal court to grant a writ of habeas corpus absent a showing of cause requires "an extraordinary case[] where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Jerrold has not established that the fundamental miscarriage of justice exception applies in his case. Even excluding all of the evidence that Jerrold asserts was improperly admitted and all objections he puts forth, other strong evidence of Jerrold's guilt, such as Chris Jackson's

11

eyewitness testimony, identification of the accused in a lineup, and the shells and casings found at the scene, substantiates the prosecution's case. Jackson's testimony combined with physical evidence in the case is sufficient to establish guilt beyond a reasonable doubt. Further, Jerrold does not assert that he is actually innocent. Therefore, the Court's declining to reach the merits of these claims would not lead to a fundamental miscarriage of justice.

## II.    Merits

Respondent does not argue that Jerrold's eighth claim, that he was deprived of due process because he was not proven guilty beyond a reasonable doubt, has been procedurally defaulted, and thus the Court reviews its merits. The review of a writ of habeas corpus is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA modified federal habeas law by creating a more deferential standard under which the federal courts review state court decisions. *Bell v. Cone*, 535 U.S. 685, 693 (2002). The Act permits courts to grant petitions for writs of habeas corpus if the claims the petitioner asserts were adjudicated by the state courts on their merits and "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(2).

Under habeas review, claims regarding sufficiency of evidence are given a "deferential standard of review, which requires us to consider not whether the state courts were incorrect but whether they were unreasonable." *Trejo v. Hulick*, 380 F.3d 1031, 1032 (7th Cir. 2004). A state court decision may be an unreasonable application if it uses the correct legal standard, but

applies that standard unreasonably to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 408 (2000). Further, if a state court unreasonably extends or fails to extend a Supreme Court precedent, a federal court may find an "unreasonable application" of the law. *Id.* A state court's application of Supreme Court law is reasonable if "the determination is at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). The "reasonableness standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997).

Because Jerrold claims insufficiency of evidence to support his conviction, the applicable Supreme Court case is *Jackson v. Virginia*, which held that due process is satisfied if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979). Accordingly, only when a state court has unreasonably applied the *Jackson* standard may a federal court grant habeas relief. *Alvarez v. O'Sullivan*, 58 F. Supp. 2d 882, 889 (N.D. Ill. 1999); *see Ford v. Ahitow*, 104 F.3d 926, 937 (7th Cir. 1997). The petitioner "must show that the facts of the case 'establish by clear and convincing evidence' that no reasonable fact-finder would have found him guilty, absent constitutional error." *Id.* (quoting 28 U.S.C. § 2254(e)(2)(B)).

The Appellate Court correctly applied the *Jackson* standard. It determined that the prosecution provided more than sufficient evidence to allow a reasonable jury to find that it had proved the elements of both crimes beyond a reasonable doubt. The court focused specifically on the eyewitness testimony of Chris Jackson, including his ability to identify Jerrold as the shooter with the handgun, both in a lineup and at court. Additionally, the court emphasized that

Jackson's testimony was more or less corroborated by Williams' statement. Williams testified as Jackson had, that Jerrold shot the handgun and had on a black, hooded shirt. Williams also was able to identify Jerrold in a lineup.

Moreover, Clark's prior testimony and grand jury testimony also corroborated portions of Williams and Jackson's statements by stating Jerrold told him there were two shooters: Jerrold with a handgun and another shooter with a shotgun. Clark also testified Jerrold told him he shot at the porch on Laramie because he believed the people on the porch to be members of a rival gang.

The prosecution also presented physical evidence, including a shotgun shell, shotgun wadding, fired cartridges from a .45 caliber fun, and fired bullets from a .45 caliber gun, all of which were found at the scene. This evidence supports that there were two shooters, one with a handgun and one with a shotgun.

Jerrold argues that the evidence raises serious doubts because Williams' recanted his statement that he witnessed the shooting at trial. He also asserts the identification of Jerrold was faulty because of the differences in Jackson's eyewitness account given on the scene to the police and at trial, such as which side of the street the shooters were on. However, Jerrold had the opportunity to point out faults in the testimony at trial. "[N]o . . . rule condemns the admission of evidence that the defendant deems untrustworthy, as long as the state affords the defendant the means to demonstrate its weaknesses . . . ." *Buie v. McAdory,* 341 F.3d 623, 625 (7th Cir. 2003). "Informants may be lying, eyewitnesses may be tricked by their own memories, and experts may produce flawed analyses. The tools of the adversary process supply the means to expose these testimonial shortcomings." *Id.*

Moreover, the differences in Jackson's testimony are not so notable as to discredit his

14

eyewitness account, particularity when the majority of his assertions were corroborated by two other witnesses. A credible eyewitness account is sufficient to support a conviction. *See Hairston*, 263 N.E.2d 840, 851 (Ill. 1970) ("If the testimony of the witnesses is positive and credible it is sufficient to convict . . . ."). Here, Jackson, as well as Williams, positively identified Jerrold in a lineup. Jackson's eyewitness testimony, combined with the physical evidence and two other witnesses' testimony was sufficient for a reasonable trier of fact to find Jerrold guilty beyond a reasonable doubt. Therefore, the appellate court's application of Supreme Court case law was not unreasonable, and the Court denies the petition for writ of habeas corpus.

## CONCLUSION

For the foregoing reasons, the Court denies the petition for writ of habeas corpus. This case is hereby terminated.

**SO ORDERED**     **ENTERED:** *11/2/04*

**HON. RONALD A. GUZMAN**
**United States Judge**